MAUD ANDERSON, PLAINTIFF-RESPONDENT, v. ATLANTIC CITY GAS COMPANY, DEFENDANT-APPELLANT.

Submitted October 13, 1928—Decided March 20, 1929.

Before Justices, TRENCHARD, KALISCH and LLOYD.

For the appellant, *Thompson & Hanstein.*

For the respondent, *Carlton Godfrey* and *William I. Garrison.*

PER CURIAM.

This is an appeal from a judgment in favor of plaintiff in the Atlantic Common Pleas, the judgment being founded upon the verdict of a jury.

A rule to show cause was granted by the judge, the point being that the verdict was excessive, and he dismissed the rule. We now have the case on appeal of the defendant.

The situation was this: The plaintiff was employed as a waitress at a restaurant on St. James Place, Atlantic City, and had been employed at the same restaurant for two years. On July 11th, 1927, at ten-thirty A. M., when she went to work, she discovered that illuminating gas was ecsaping in the street in front of her place of employment. She entered the restaurant, and about one-thirty P. M., she was taken sick and vomited. She went home and returned to the restaurant about four o'clock. The street was still filled with the fumes of illuminating gas and she worked until seven P. M., when she was compelled to go home because of headache and vomiting. The foregoing matters of fact appearing at the trial seem

not to be in dispute. We believe that the evidence justified the inference that the escaping gas entered the restaurant and was the proximate cause of the plaintiff's sickness.

The plaintiff's claim was that as a result of the inhalation of the monoxide gas she was injured and suffered for a long time and still suffered at the time of the trial, and this suit was brought to recover the consequent damages.

It is alleged that the court erred in the admission of testimony. The question complained of is as follows:

"Now, doctor, assuming that the plaintiff had a dormant disease like tuberculosis or weak heart, what effect would the inhalation of monoxide have on that condition?"

The witness was the plaintiff's doctor and was admittedly an expert, and the question was proper in view of some evidence of the development of a tubercular condition and a weak heart.

Other testimony objected to was stricken out, and if erroneous, in the circumstances constituted no reason for reversal.

The motions to nonsuit and to direct a verdict were properly denied. The testimony tended to show that the street was full of gas; that it came from a pipe in the street over which the defendant had control; that at ten o'clock in the morning the company was notified of the dangerous condition that existed at that point; that the gas company failed to pay any attention to the complaint until it was notified the second time and that was after the plaintiff and other nearby persons had been affected or overcome by the gas; that sometime in the evening the company sent a number of its employes to investigate and they found a leak in the pipe and stopped the flow of gas; that the next day the employes of the defendant returned and removed a rusty pipe which had rusted and had holes in it.

It is alleged that the court erred in charging the jury as follows:

"Gas being an extraordinarily dangerous element, an extraordinarily high degree of care and skill is exacted, and the rule of ordinary care with respect to its transmission is adjusted, in view of its known dangers and probable entailment, by a standard of care proportionate to the probable dangers."

The complaint respecting this phase of the charge is the assumption by the judge that "gas is an extraordinarily dangerous element." We think the assumption was correct. It is certainly, in some circumstances and under certain conditions, an extraordinarily dangerous element, and such circumstances and conditions, the evidence tends to show were present in the case at bar.

It is also said that the court erred in charging the jury as follows:

"Corporations manufacturing and distributing gas are held to a high degree of care in the maintenance of their pipes and are required to exercise every reasonable precaution suggested by known dangers. Where the existence of a leak is known, means should be taken at once to avoid injury, and where it should have been known that a leak was likely to occur because of defective conditions of the pipes, negligence may be imputed."

The complaint as to this is, first, the expression "high degree of care," the argument being that there may be circumstances in which a high degree of care in the maintenance of pipes might not be necessary. But if that be so, we think that the admitted circumstances of the present case of the proximity of many human beings in the immediate vicinity of these pipes did call for a high degree of care. The second complaint of this particular part of the charge is the use of the words "at once." What the judge meant by "at once" was made perfectly plain to the jury by his subsequent instruction that "if the defendant turned off the gas with reasonable promptness after being advised of escaping gas, it is not liable." To a like effect are other expressions in the charge.

It is also alleged that the court erred in charging the jury as follows:

"There can be no liability on the part of this defendant company for any leak that may have occurred in the pipes leading from the curb to the house unless the defendant company has been notified that such a leak existed and were ordered to turn off the gas or make the repairs and took the order and undertook to turn off the gas or make the repairs and delayed turning off the gas or making the repairs."

Here the complaint is as to the use of the word "delayed" without modification. But as we have already indicated, we think that there was a modification of it in such form that the jury could not have been misled as to the true rule.

It is also said that the trial judge erred in charging the jury as follows:

"In other words, the gas pipes in the streets are under the direct control of the gas company, and the gas company is responsible for any negligence in not taking the ordinary and proper method to prevent anyone from being injured by reason of gas escaping in the streets."

We find no fault with that instruction.

It is also said that the judge erred in charging as follows:

"But the gas company can only be liable for gas escaping through pipes that are on the premises of the owner of the house and under his control when the gas company has been notified of the leak and been requested to come and repair the leak and has negligently delayed in making the repairs or turning off the gas."

We find no fault with that instruction.

It is also alleged that the court erred in charging the jury as follows:

"In this case, it is an important case because if the plaintiff is entitled to recover and if the injuries complained of by her and enumerated in this case are the result of her having inhaled the gas of the defendant company, then, of course, the plaintiff is entitled to substantial damages."

It is argued that this charge was erroneous because it is said that there was evidence that the plaintiff did not suffer any injury due to gas poisoning. But that argument ignores the fact that the instruction was by its terms contingent upon a finding that she did.

It is also alleged that the court erred in charging the jury as follows:

"If you decide that the defendant company was negligent, and if it appears from the entire case that the plaintiff was free from any contributory negligence on her part and that the negligence of the company is responsible for the condition of the woman to-day, then, of course, you go to the question of what damage she should recover."

We see no error in that instruction.

We believe that the foregoing observations dispose of every allegation reason for reversal which requires comment.

The judgment will be affirmed, with costs.